**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

LAVASTONE CAPITAL LLC, )
)
Plaintiff, )
)
v. ) Civil Action No: 14-CV-7139(JSR)(DCF)
)
COVENTRY FIRST LLC, et al., )
)
Defendants. )
)

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**

Beginning in 2001, Coventry First LLC ("Coventry First") and certain affiliates of AIG, including Plaintiff Lavastone Capital LLC (collectively "AIG"), contracted for AIG to purchase life settlement policies. During the following decade, AIG amassed almost 7,000 policies, the largest portfolio in the business. Then, ten years into the deal and with new management, AIG decided to reverse course, stop acquiring policies, and attempt to sell the portfolio it owned. AIG determined that, if it could escape its contractual obligations to Coventry First, this portfolio would be worth much more and would be easier to sell.

AIG now refuses to honor a deal in which Coventry First sold to AIG thousands of policies that it reasonably believed satisfied AIG's extensive Eligibility Criteria as set forth in the parties' contracts—what the parties called "in the box" policies. When policies were in the box, otherwise complied with the contracts, and were timely approved by AIG, Coventry First was contractually bound to sell them to AIG on favorable terms. The contracts also afforded Coventry First the right to receive certain fees, as well as valuable rights that would remain attached to the AIG portfolio even if AIG's policies were sold, including the right to continue as

servicer of the policies and a right of first refusal if the policies ever were offered for sale.[1] Shedding these and other contractual obligations could add $700 million or more to the value of AIG's portfolio.

Because those rights diminished the attractiveness of AIG's portfolio to potential purchasers, AIG first tried to renegotiate the deal. When that failed, AIG began looking for grievances it could package into a lawsuit and gain leverage to escape the bargain it had made but no longer wanted to honor.

The core of AIG's complaint alleges a contractual entitlement to the favorable pricing terms on every policy it purchased, whether or not the policy met the Eligibility Criteria, otherwise complied with the contracts, or was timely approved. AIG objects in particular that some policies it purchased had been acquired by Coventry First at lower prices. Besides suing for breach, AIG has added sweeping allegations of intentional misconduct, and on that fanciful theory has brought claims for fraud, breach of fiduciary duty, and civil racketeering against Coventry First and the other defendants.

But AIG does not even have a valid breach of contract claim. AIG cites no contractual right—because there is none—to purchase ***all*** policies on the same favorable terms. And AIG ignores the explicit contractual reservation by Coventry First of "the right (but not the obligation), in its sole discretion, to offer to sell to any other Person any Life Policy that [did] not satisfy all of the Eligibility Criteria or as to which [AIG] disapprove[d] the purchase thereof." Dkt. 30, Ex. A § 2.01(b).[2]

---

[1] Other rights that would remain attached to the portfolio if sold included: privacy restrictions to protect insureds; limits on accessing and updating medical records; restrictions on AIG's ability to transfer underlying sales agreements; and limitations on the pool of qualified potential buyers.

[2] All docket references are to Case No. 14-cv-7139 unless otherwise noted. Docket references to Case No. 14-cv-7967 are so designated.

The record of the parties' dealings over years establishes without dispute that AIG in fact knowingly and regularly agreed to purchase out of the box policies from Coventry First or its affiliates at mark-ups from the price Coventry First paid to acquire them. Among other things, in 2008 the report from AIG's annual audit of Coventry First specifically identified the existence of such purchases. The audit gave as an example an out of the box policy purchased from Coventry First for multiples more than Coventry First paid to acquire it less than a month earlier. The audit also reported that Coventry First was not sharing its original purchase price for out of the box policies later sold to AIG. The report noted that the AIG executive who supervised the relationship said this practice by Coventry First was acceptable. *See* Case No. 14-cv-7967, Dkt. 20, at 3. Nearly two dozen other senior AIG executives—including the CEO, CFO, General Counsel, and Executive Vice President of Chartis (AIG's property-and-casualty insurance business)—received the audit. No one claimed that Coventry First had breached the agreement, let alone defrauded anyone. In fact, a process was put in place whereby AIG would provide written acknowledgements when it purchased a policy from a Coventry First affiliate. These acknowledgements were sent in connection with every transaction at what AIG now claims was a "markup." Subsequent audit reports—expressly undertaken to "ensure that the administrator is operating under the current agreement and is adhering to all contractual terms"—raised no objection even though the policies reviewed included out of the box policies AIG purchased from Coventry First or one of its affiliates, and for which Coventry First declined to supply the price it paid the original seller.

Two years later, while the parties were negotiating an extension to the contract, AIG requested an amendment to extend the "in the box" favorable pricing terms to many policies that were out of the box. Coventry First declined.

AIG's present interpretation of the contract also contradicts testimony from two former senior AIG executives who had responsibility for administering the agreement and in particular for approving the pricing terms for both in the box and out of the box policies. These sworn declarations were provided to AIG more than a year before it filed this lawsuit. AIG's former Senior Vice President and Chief Underwriting Officer testified that he "was aware that Coventry First would (1) procure 'out of the box' or disapproved policies; (2) sell those policies to its affiliates LST I and LST II or an unaffiliated purchaser; and (3) later reacquire those policies and sell them to AIG," often "at prices higher than the prices Coventry First had originally paid for the policies." Case No. 14-cv-7967, Dkt. 27, Ex. C ¶ 4. These practices, he testified, were consistent with AIG's understanding of the agreement. *Id.*

A second former AIG executive also testified in 2013 to the same thing, adding that he and "others on AIG's life settlement team reviewed the contracts and concluded" that transactions in which "'out of the box' policies [were] sold to AIG at a higher price than the price Coventry First originally paid for the policies" were allowed under the contract. Case No. 14-cv-7967, Dkt. 27, Ex. B ¶ 4. Both executives left AIG on good terms after AIG made the business decision to stop buying policies, and decided instead to sell the policy portfolio these executives helped the company acquire.

There would be no need for AIG to propose a contract amendment in 2010 to eliminate mark-ups on out of the box policies if the contract already barred them. The parties' extensive dealings on this issue confirm that both sides understood that the contracts permitted exactly the conduct AIG now says they proscribe. AIG's new management obviously views the elimination of Coventry First and its affiliates as the way to make its portfolio more valuable and easier to sell, but it cannot erase the contract language or the parties' multi-year course of conduct

confirming the correct interpretation of their contracts by those who negotiated and administered them. There is especially no basis for AIG to dress up this contract dispute in the language of tort, much less characterize it as a "racketeering" conspiracy naming not just the principal executives of Coventry First but their wives as well. Interfering with Coventry First's ability and right to carry on its business is the only conceivable rationale for converting an ordinary business dispute into something that sounds far more serious. Defendants deny the wrongdoing alleged in AIG's complaint, and look forward to the presentation of evidence—rather than allegations—regarding the claims therein.

**ANSWERS TO PARTICULAR ALLEGATIONS**

1. The allegations set forth in paragraph 1 are denied.

2. Defendants admit that the life settlements industry involves life insurance policyholders who wish to sell their policies for an immediate cash payment. Defendants admit that purchasers of life policies often pay premiums on policies until such time as the policies mature in a claim or further premiums are no longer necessary to keep the policy in force. Defendants admit that the owner of a life policy at the time of the insured's death may claim the policy's death benefit if eligible. Defendants admit that life settlement transactions often offer policyholders an option to sell their life policies for a lump sum payment that can be higher than the cash surrender value offered by the insurer. Defendants admit that investing in life settlements can be profitable. Except as thus expressly admitted, the allegations set forth in paragraph 2 are denied.

3. Defendants admit that Coventry First and AIG entered into Origination Agreements, including a Life Policies Origination Agreement between Coventry First, AIG Life Settlements LLC, and U.S. Bank N.A. dated June 29, 2006. Defendants deny that AIG has

completely or accurately characterized the parties' obligations under the Origination Agreements or the process followed for the sale of in the box policies to AIG. Defendants admit that AIG paid fees under the parties' Origination Agreements in connection with sales of in the box policies to AIG. Except as thus expressly admitted, the allegations set forth in paragraph 3 are denied.

4. Defendants admit that Coventry First was permitted, but not required, to offer out of the box policies to AIG, and that Coventry First could offer out of the box policies to other buyers. Defendants further admit that they received fees in connection with transfers of out of the box policies to AIG. Except as thus expressly admitted, the allegations set forth in paragraph 4 are denied.

5. The allegations set forth in paragraph 5 are denied.

6. The allegations set forth in paragraph 6 are denied.

7. The allegations set forth in paragraph 7 are denied.

8. The allegations set forth in paragraph 8 are denied.

9. The allegations set forth in paragraph 9 are denied.

10. The allegations set forth in paragraph 10 are denied.

11. The allegations set forth in paragraph 11 are denied.

12. Defendants deny the allegations set forth in the first sentence of paragraph 12. Defendants admit that the New York Attorney General's Office ("NYAG") filed a complaint against Coventry First, Montgomery Capital, and Reid Buerger in 2006 related to the purchase of life policies. Defendants deny that AIG has completely or accurately characterized that complaint or the NYAG's investigation. Defendants admit that Reid Buerger invoked his Fifth Amendment rights in response to certain questions posed by the NYAG in September 2006.

Defendants deny, however, that Mr. Buerger's invocation of his Fifth Amendment rights prior to the filing of the NYAG's complaint has any significance in this case. Defendants admit that Coventry First entered into a settlement with the NYAG in 2009 that did not involve an assessment of any fine or penalty. Pursuant to its settlement agreement with the NYAG, Coventry First agreed to make monetary payments totaling approximately $12 million. Defendants deny that the NYAG complaint or Coventry First's settlement with the NYAG have any relevance to this case. Except as thus expressly admitted, the allegations set forth in paragraph 12 are denied.

13. The allegations set forth in paragraph 13 are denied.

14. The allegations set forth in paragraph 14 are denied.

15. Defendants admit that AIG Life Settlements LLC was a predecessor to Lavastone Capital LLC, that Lavastone Capital LLC was at one time in the business of investing in Life Policies, and that Lavastone Capital LLC is a subsidiary of American International Group, Inc. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the remaining allegations set forth in paragraph 15 and the footnote thereto.

16. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in paragraph 16.

17. Defendants admit the allegations in the first three sentences of paragraph 17. Except as thus expressly admitted, the allegations set forth in paragraph 17 are denied.

18. Defendants admit the allegations in the first two sentences of paragraph 18. Except as thus expressly admitted, the allegations set forth in paragraph 18 are denied.

19. Defendants admit the allegations in the first and second sentences in paragraph 19. Except as thus expressly admitted, the allegations set forth in paragraph 19 are denied.

20. Defendants admit the allegations in the first and third sentences of paragraph 20. Defendants further admit that Montgomery Capital was established on August 26, 1999 and is owned by Alan Buerger, Constance Buerger, Reid Buerger, and a trust. Except as thus expressly admitted, the allegations set forth in paragraph 20 are denied.

21. Defendants admit the allegations in the first sentence of paragraph 21. Defendants admit that Alan Buerger serves as the Chairman, Chief Executive Officer, and Treasurer of Coventry First and the Chief Executive Officer of LST I and LST II. Defendants further admit that Alan Buerger serves on the Board of Managers of LST I and LST II. Except as thus expressly admitted, the allegations set forth in paragraph 21 are denied.

22. Defendants admit the allegations in the first two sentences of paragraph 22. Defendants further admit that Constance Buerger serves as the President and Chief Operating Officer of LST I and LST II and that she is a member of the Board of Managers of LST I and LST II. Except as thus expressly admitted, the allegations set forth in paragraph 22 are denied.

23. Defendants admit the allegations in the first, second, and third sentences of paragraph 23. Defendants further admit that Reid Buerger serves as an Executive Vice President of LST I and LST II and that he is a member of the Board of Managers of LST I and LST II. Except as thus expressly admitted, the allegations set forth in paragraph 23 are denied.

24. Defendants admit that Krista Lake Buerger is married to Reid Buerger and resides in Pennsylvania. Except as thus expressly admitted, the allegations set forth in paragraph 24 are denied.

25. Defendants admit that the organizational chart attached as Exhibit A to AIG's Complaint was filed in *Griswold v. Coventry First LLC*, No. 10 Civ. 5964 (CDJ) (E.D. Pa. Dec. 6, 2010), Dkt. 28-1. Defendants admit that the ownership chart accurately reflected the

ownership and structure of the entities listed on the chart as of 2007. Defendants admit that the Third Circuit upheld the Eastern District of Pennsylvania's denial of defendants' motion to dismiss and to compel arbitration in *Griswold*, but they deny that the rulings or opinions of the District Court or Third Circuit support any of AIG's allegations in this case. Except as thus expressly admitted, the allegations set forth in paragraph 25 are denied.

26. The allegations set forth in paragraph 26 are denied.

27. Coventry First admits that it is subject to the exercise of personal jurisdiction by this Court. Except as thus expressly admitted, the allegations set forth in paragraph 27 are denied.

28. Coventry First admits that it is subject to the exercise of personal jurisdiction by this Court. Except as thus expressly admitted, the allegations set forth in paragraph 28 are denied.

29. Coventry First does not contest venue in this Court. Except as thus expressly admitted, the allegations set forth in paragraph 29 are denied.

30. Defendants admit that the life settlements industry provides a secondary market for life insurance policies that enables policyholders to receive cash payments in exchange for their policies. Defendants admit that purchasers of life policies can pay premiums on policies until such time as the policies mature in a claim or further premiums are no longer necessary to keep the policy in force. Defendants admit that policy sellers may include high-net-worth individuals with at least two years of life expectancy who have determined to sell their policies for any number of reasons. Defendants admit that life policies with a face amount of between one hundred thousand and ten million dollars are sold on the secondary market. Except as thus expressly admitted, the allegations set forth in paragraph 30 are denied.

31. Defendants admit that transactions in life policies can be beneficial to both the seller and the purchaser. Defendants admit that investors can purchase, and sellers can sell, policies for more than the cash surrender value offered by the insurer, and that as a result of life settlement transactions, policy sellers can be relieved of any further obligation to make premium payments. Defendants admit that the beneficiary of a life policy at the time of the insured's death may claim the policy's death benefit, if eligible. Except as thus expressly admitted, the allegations set forth in paragraph 31 are denied.

32. Defendants admit that brokers can connect prospective sellers and purchasers in life settlement transactions in exchange for fees. Defendants lack knowledge or information sufficient to admit or deny, and thus deny, the remaining allegations set forth in paragraph 32.

33. The allegations set forth in paragraph 33 are denied.

34. Defendants admit that predecessors to Coventry First and AIG entered into an Origination Agreement in 2001, and that the parties to that agreement negotiated the agreement prior to executing it. Except as thus expressly admitted, the allegations set forth in paragraph 34 are denied.

35. Defendants admit that Coventry First and AIG Life Settlements LLC entered into a Life Policies Origination Agreement and a Servicing and Monitoring Agreement in 2006. Defendants further admit that Coventry First received fees pursuant to both agreements. With respect to footnote 2, Defendants admit that some language in the various iterations of the Origination Agreements and Servicing and Monitoring Agreements executed by Coventry First and AIG during the parties' relationship is similar or identical, but that other language in the agreements changed over time. Defendants admit that the Complaint purports to cite February 12, 2010 versions of the Origination and Servicing and Monitoring Agreements between

Coventry First and AIG.[3] Except as thus expressly admitted, the allegations set forth in paragraph 35 (and footnote 2 thereto) are denied.

36. Defendants admit that Coventry First and AIG entered into an Origination Confidentiality Agreement in 2010 and that some of the Origination Agreements contained confidentiality provisions. Except as thus expressly admitted, the allegations set forth in paragraph 36 are denied.

37. Defendants admit the allegations in paragraph 37.

38. The allegations set forth in paragraph 38 are denied.

39. The allegations set forth in paragraph 39 are denied.

40. Defendants admit that in the 2010 Wells Fargo Origination Agreement, Coventry First is an "Originator and seller," and Lavastone Capital LLC is the Purchaser. Defendants further admit that Wells Fargo Bank N.A. and U.S Bank N.A. were parties to certain Origination Agreements as Fiscal Agents. Defendants admit that the Fiscal Agents played a role in the sale of life policies to AIG and that the role of the Fiscal Agents included holding and transferring funds from escrow. Defendants also admit that Tripartite Entitlement Orders ("TEOs") were among the documents used in connection with certain sales of life policies to AIG. Except as thus expressly admitted, the allegations set forth in paragraph 40 are denied.

41. Defendants admit that the Origination Agreements set forth processes for purchases of life policies by AIG. Defendants deny that AIG has completely or accurately

---

[3] Defendants assume for purposes of this Answer that the "Origination Agreement" refers to the February 12, 2010 Amended and Restated Life Policies Origination Agreement between Coventry First LLC, Lavastone Capital LLC, and Wells Fargo Bank, N.A. (the "2010 Wells Fargo Origination Agreement") and the "Servicing Agreement" refers to the February 12, 2010 Amended and Restated Servicing and Monitoring Agreement between Lavastone Capital LLC, Coventry First LLC, and Wells Fargo Bank, N.A. (the "2010 Wells Fargo Servicing Agreement").

characterized the processes for purchases under those agreements. Except as thus expressly admitted, the allegations set forth in paragraph 41 are denied.

42. Defendants admit that Coventry First was free to offer and sell out of the box policies to AIG or anyone else, including Coventry First's affiliates. Except as thus expressly admitted, the allegations set forth in paragraph 42 are denied.

43. Defendants admit that the Origination Agreements contained terms regarding life policies that AIG declined to purchase. Defendants deny that AIG has completely or accurately characterized the provisions of the Origination Agreements related to such policies. Except as thus expressly admitted, the allegations set forth in paragraph 43 are denied.

44. Defendants admit that the Origination Agreements provided for various fees to be paid to Coventry First, including origination fees, front-end incentive fees, and success fees. Defendants further admit that the Origination Agreements required AIG to reimburse Defendants for certain broker fees paid in connection with AIG's purchases of life policies. Defendants deny that AIG has completely or accurately characterized the provisions of the Origination Agreements related to fees. Except as thus expressly admitted, the allegations set forth in paragraph 44 are denied.

45. Defendants admit that the Origination Agreements contained terms that restricted both Coventry First and AIG from taking certain actions. Except as thus expressly admitted, the allegations set forth in paragraph 45 are denied.

46. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in the first sentence of paragraph 46. Defendants admit that the Origination Agreements contained Eligibility Criteria that were defined in those agreements. Defendants further admit that the Eligibility Criteria were a factor in determining whether

particular policies were in the box. Except as thus expressly admitted, the allegations set forth in paragraph 46 are denied.

47. Defendants admit that brokers and other participants in the life settlements market would sometimes identify life policies for potential purchase by Coventry First. Except as thus expressly admitted, the allegations set forth in paragraph 47 are denied.

48. Defendants admit that Coventry First obtained medical records of insureds. Defendants further admit that Coventry First provided certain of these records to AIG via FTP or using the MURS system. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in the last sentence of paragraph 48. Except as thus expressly admitted, the allegations set forth in paragraph 48 are denied.

49. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in paragraph 49.

50. Defendants admit that AIG provided Life Expectancy ("LE") calculations and mortality tables to Coventry First. Defendants further admit that an LE calculation estimates the life expectancy of an insured and that a mortality table is a chart that contains probabilities of death based on age and other factors. Except as thus expressly admitted, the allegations set forth in paragraph 50 are denied.

51. Defendants admit that Coventry First gathered information from insureds and AIG and undertook certain calculations based on that information. Except as thus expressly admitted, the allegations set forth in paragraph 51 are denied.

52. The allegations set forth in the first sentence of paragraph 52 are denied. Defendants admit that Section 2.01(b) of the 2010 Wells Fargo Origination Agreement contains the language quoted in the third and fourth sentences of paragraph 52 (except the brackets and

emphasis). Defendants deny that AIG has completely or accurately characterized Coventry First's exclusivity obligations under the Origination Agreements. Defendants admit that the document cited in the fifth sentence of paragraph 52 contains the quoted language, but they deny that the document has any significance in this case. Except as thus expressly admitted, the allegations set forth in paragraph 52 are denied.

53. Defendants admit that Coventry First provided AIG with information regarding policies as part of a Pre-Offer Review ("POR") process, but deny that AIG has completely or accurately characterized that process (or accurately quoted from Section 4.01 of the 2010 Wells Fargo Origination Agreement). Defendants admit that Coventry First sometimes sent AIG information about life policies by e-mail or other electronic means (including via the PEGA system). Defendants admit that information sent by Coventry First may have included information about premiums due under a life policy, the policy's net death benefit, the insured's LE, and potential prices and yields for the policy. Defendants admit that Coventry First sometimes assigned life policies priority ratings. Except as thus expressly admitted, the allegations set forth in paragraph 53 are denied.

54. Defendants admit that the pricing information included in POR packages was the product of a pricing model that was developed jointly by Coventry First and AIG. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in the third and fourth sentences of paragraph 54. Except as thus expressly admitted, the allegations set forth in paragraph 54 are denied.

55. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in the first, second, and third sentences of paragraph 55. Defendants admit that AIG would sometimes issue POR Approvals in connection with certain

policies and that some of the POR Approvals contained the language quoted in the fourth sentence of paragraph 55 (excluding the words in brackets). Defendants further admit that the Origination Agreements provided for a "Front-End Incentive Fee." Except as thus expressly admitted, the allegations set forth in paragraph 55 are denied.

56. The allegations set forth in paragraph 56 are denied.

57. Defendants admit that Section 5.01 of the 2010 Wells Fargo Origination Agreement references the provision of Sale Documentation Packages (which included Disbursement Schedules) to the Fiscal Agent, but they deny that AIG has completely or accurately characterized that provision or the process of providing documentation to AIG. Defendants further admit that Sale Documentation Packages (including Disbursement Schedules) were often provided to Fiscal Agents (sometimes via e-mail and overnight carrier), and that Disbursement Schedules were often provided to AIG (sometimes via e-mail, along with certain additional information) in connection with certain sales of life policies to AIG. Except as thus expressly admitted, the allegations set forth in paragraph 57 are denied.

58. The allegations set forth in paragraph 58 are denied.

59. Defendants admit that TEOs were sent to Fiscal Agents (in some cases via e-mail and/or mail) in connection with purchases of certain life policies by AIG. Except as thus expressly admitted, the allegations set forth in paragraph 59 are denied.

60. Defendants admit that TEOs were used in connection with purchases of certain life policies by AIG, and that Disbursement Schedules attached to certain TEOs contained instructions to Fiscal Agents for the wiring of funds to and from parties that might (depending on the transaction) include AIG, Coventry First, or original policyholders, among others. Defendants deny that AIG has completely or accurately characterized the use and significance of

TEOs. Defendants further admit that rights in life insurance policies were transferred to AIG in connection with transfers of its funds and that AIG sometimes transferred fees to Coventry First in connection with purchases of life policies. Except as thus expressly admitted, the allegations set forth in paragraph 60 are denied.

61. The allegations set forth in the first sentence of paragraph 61 are denied. Defendants admit that the document cited in the second sentence of paragraph 61 contains the quoted language, but they deny that the document has any significance in this case. Except as thus expressly admitted, the allegations set forth in paragraph 61 are denied.

62. Defendants admit that sales of out of the box policies were governed by a separate process than sales of in the box policies. Except as thus expressly admitted, the allegations set forth in paragraph 62 are denied.

63. Defendants admit that Coventry First was not obligated to offer out of the box policies for sale to AIG. Defendants admit that Section 2.01(b) of the 2010 Wells Fargo Origination Agreement contains the language quoted in the second sentence of paragraph 63. Defendants also admit that Defendants had the right to purchase out of the box policies for any of their own accounts. Defendants admit that Coventry First sometimes presented out of the box policies to AIG for its review and potential purchase and that AIG sometimes was provided with certain information regarding such policies (sometimes by e-mail or PEGA). Except as thus expressly admitted, the allegations set forth in paragraph 63 are denied.

64. Defendants admit that AIG provided Coventry First with POR Approvals that included waivers of certain Eligibility Criteria. Except as thus expressly admitted, the allegations set forth in paragraph 64 are denied.

65. The allegations set forth in paragraph 65 are denied.

66. The allegations set forth in paragraph 66 are denied.

67. The allegations set forth in paragraph 67 are denied.

68. The allegations set forth in paragraph 68 are denied.

69. Defendants admit that AIG did not purchase all policies Coventry First presented for its review. Defendants admit that any policy presented to AIG by Coventry First would be deemed disapproved if AIG did not issue a POR Approval by the deadline set forth in the Origination Agreements. Defendants admit that Coventry First sometimes presented a number of policies per week for AIG's review. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in the last sentence of paragraph 69. Except as thus expressly admitted, the allegations set forth in paragraph 69 are denied.

70. Defendants admit that Section 4.01 of the 2010 Wells Fargo Origination Agreement contains the quoted language, but they deny that AIG has completely or accurately characterized that provision. Defendants admit that Coventry First and AIG were often in contact regarding life policies and that such discussions may have been conducted via e-mail or telephone. Except as thus expressly admitted, the allegations set forth in paragraph 70 are denied.

71. The allegations set forth in paragraph 71 are denied.

72. Defendants admit that the 2010 Wells Fargo Origination Agreement provided for the payment of origination fees, front-end incentive fees, and success fees to Coventry First (as well as the reimbursement of certain costs) and that Coventry First received origination fees and front-end incentive fees (as well as reimbursement of costs) in connection with certain transactions. The remaining allegations set forth in paragraph 72 are denied.

73. Defendants admit that AIG paid origination fees in connection with AIG's purchases of certain life policies. Defendants admit that the origination fees were calculated based on a specified percentage of a policy's net death benefit. Except as thus expressly admitted, the allegations set forth in paragraph 73 are denied.

74. Defendants admit that AIG paid Coventry First front-end incentive fees under certain circumstances, as set forth in the Origination Agreements. Defendants admit that the amounts of the front-end incentive fees changed over time and were the subject of negotiations between Coventry First and AIG. Except as thus expressly admitted, the allegations set forth in paragraph 74 are denied.

75. Defendants admit that the 2010 Wells Fargo Origination Agreement provided for success fees to be paid by AIG to Coventry First under certain circumstances. Defendants admit that Coventry First has not received any success fees from AIG to date. Except as thus expressly admitted, the allegations set forth in paragraph 75 are denied.

76. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in the third, fourth, fifth, and sixth sentences of paragraph 76. The remaining allegations set forth in paragraph 76 are denied.

77. Defendants admit that AIG agreed to reimburse Defendants for certain costs incurred in connection with AIG's acquisition of policies, and that the definition of Acquisition Costs at page D-1 of the 2010 Wells Fargo Origination Agreement included fees that AIG agreed to reimburse (such as broker fees). Defendants deny that paragraph 77 accurately and completely characterizes the obligations of the parties under the Origination Agreements. Except as thus expressly admitted, the allegations set forth in paragraph 77 are denied.

78. The allegations set forth in paragraph 78 are denied.

79. Defendants admit that the language quoted in the first sentence of paragraph 79 appears in Section 3.02(a)(iii) of the 2010 Wells Fargo Origination Agreement, but they deny that AIG has completely or accurately characterized that provision. Except as thus expressly admitted, the allegations set forth in paragraph 79 are denied.

80. Defendants admit that the language quoted in the first sentence of paragraph 80 (except the ellipses and brackets) appears in Section 3.03(c) of the 2010 Wells Fargo Origination Agreement, but they deny that AIG has accurately characterized that provision. Except as thus expressly admitted, the allegations set forth in paragraph 80 are denied.

81. The allegations set forth in paragraph 81 are denied.

82. Defendants admit that Coventry First and AIG agreed to certain confidentiality provisions as set forth in various agreements between the parties. Defendants admit that the quoted language in the second and third sentences of paragraph 82 appears in Sections 6.01 and 6.02 of the Life Policies Origination Agreement between Coventry First LLC, AIG Life Settlements LLC, and U.S. Bank N.A. dated June 29, 2006 (the "2006 U.S. Bank Origination Agreement"). Except as thus expressly admitted, the allegations set forth in paragraph 82 are denied.

83. Defendants admit that Coventry First and Plaintiff entered into an Origination Confidentiality Agreement in 2010. Defendants further admit that the language quoted in the second sentence of paragraph 83 appears in Section 2(b)(v) of the Origination Confidentiality Agreement, and that the definition of "Lavastone Business Information" in the Origination Confidentiality Agreement contains the language quoted in the third sentence of paragraph 83. Defendants deny that Plaintiff has accurately or completely characterized the quoted provisions. Except as thus expressly admitted, the allegations set forth in paragraph 83 are denied.

84. Defendants admit that Coventry First, Lavastone Capital, and U.S. Bank N.A. entered into an Amended and Restated Life Policies Origination Agreement on December 17, 2013 (the "2013 U.S. Bank Origination Agreement"). Defendants further admit that the language quoted in paragraph 84 appears in Sections 6.01 and 6.02 of the 2013 U.S. Bank Origination Agreement. Defendants deny that Plaintiff has accurately or completely characterized the quoted provisions. Except as thus expressly admitted, the allegations set forth in paragraph 84 are denied.

85. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in the second sentence of paragraph 85. Defendants admit that Coventry First entered into Servicing and Monitoring Agreements with AIG and that it performed various services for AIG under those agreements. Except as thus expressly admitted, the allegations set forth in paragraph 85 are denied.

86. Defendants admit that AIG paid Coventry First servicing fees that were calculated as a percentage of the aggregate net death benefits in AIG's portfolio on an annual basis. Except as thus expressly admitted, the allegations set forth in paragraph 86 are denied.

87. Defendants admit that the language quoted in paragraph 87 appears in Section 5.03(a) of the Amended and Restated Servicing and Monitoring Agreement between Lavastone Capital LLC, Coventry First LLC, and U.S. Bank N.A. dated December 17, 2013 (the "2013 Wells Fargo Servicing Agreement"), but they deny that AIG has accurately characterized that provision. Except as thus expressly admitted, the allegations set forth in paragraph 87 are denied.

88. The allegations set forth in paragraph 88 are denied.

89. The allegations set forth in paragraph 89 are denied.

90. The allegations set forth in paragraph 90 are denied.

91. The allegations set forth in paragraph 91 are denied.

92. The allegations set forth in paragraph 92 are denied.

93. The allegations set forth in paragraph 93 are denied.

94. The allegations set forth in paragraph 94 are denied.

95. The allegations set forth in paragraph 95 are denied.

96. The allegations set forth in paragraph 96 are denied.

97. Defendants admit that AIG purchased in the box and out of the box policies from Coventry First. Except as thus expressly admitted, the allegations set forth in paragraph 97 are denied.

98. The allegations set forth in paragraph 98 are denied.

99. The allegations set forth in paragraph 99 are denied.

100. The allegations set forth in paragraph 100 are denied.

101. The allegations set forth in paragraph 101 are denied.

102. The allegations set forth in paragraph 102 are denied.

103. The allegations set forth in paragraph 103 are denied.

104. Defendants admit that Coventry First personnel sometimes sent Sale Documentation Packages to Fiscal Agents by e-mail and overnight courier. Except as thus expressly admitted, the allegations set forth in paragraph 104 are denied.

105. Defendants admit that they sometimes sent partially executed TEOs to Fiscal Agents. Except as thus expressly admitted, the allegations set forth in paragraph 105 are denied.

106. Defendants admit that the Fiscal Agents transferred funds from AIG to Coventry First or policyholders, among others, in connection with certain transactions. Except as thus expressly admitted, the allegations set forth in paragraph 106 are denied.

107. The allegations set forth in paragraph 107 are denied.

108. The allegations set forth in paragraph 108 are denied.

109. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on June 16, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on June 16, 2009. To the extent the allegations in the third sentence of paragraph 109 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated August 25, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,900,000. Except as thus expressly admitted, the allegations set forth in paragraph 109 (and the footnotes thereto) are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

110. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on August 11, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on August 12, 2009. To the extent the allegations in the third sentence of paragraph 110 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated November 24, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,400,000. Except as thus expressly admitted, the allegations set forth in paragraph 110 are denied.

Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

111. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on February 24, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on February 26, 2009. To the extent the allegations in the third sentence of paragraph 111 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated April 15, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,145,000. Except as thus expressly admitted, the allegations set forth in paragraph 111 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

112. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on August 26, 2010. Defendants admit that Lavastone issued a POR approval for the same policy on August 30, 2010. To the extent the allegations in the third sentence of paragraph 112 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated February 21, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $1,575,000. Except as thus expressly admitted, the allegations set forth in paragraph 112 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

113. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 23, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on September 24, 2009. Defendants admit that the disbursement schedule dated November 24, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,280,000. Except as thus expressly admitted, the allegations set forth in paragraph 113 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

114. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 22, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on September 22, 2011. To the extent the allegations in the third sentence of paragraph 114 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated December 29, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $887,875. Except as thus expressly admitted, the allegations set forth in paragraph 114 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

115. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 23, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on September 23, 2009. Defendants admit that the disbursement schedule dated December 23, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,625,000. Except as thus expressly admitted, the allegations set forth in

paragraph 115 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

116. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 23, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on September 23, 2009. Defendants admit that the disbursement schedule dated December 3, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $232,760. Except as thus expressly admitted, the allegations set forth in paragraph 116 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

117. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on June 7, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on June 8, 2011. To the extent the allegations in the third sentence of paragraph 117 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Except as thus expressly admitted, the allegations set forth in paragraph 117 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

118. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on May 10, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on May 10, 2011. Defendants admit that the disbursement schedule dated August 22, 2011 for the sale of the policy accurately listed LST Holdings as the Seller and the Purchase Price as $740,000. Except as thus expressly admitted, the allegations set forth in paragraph 118

are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

119. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on February 10, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on February 11, 2011. Defendants admit that the disbursement schedule dated August 2, 2011 for the sale of the policy accurately listed LST Holdings as the Seller and the Purchase Price as $535,000. Except as thus expressly admitted, the allegations set forth in paragraph 119 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

120. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 23, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on September 23, 2009. Defendants admit that the disbursement schedule dated December 4, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $92,240. Except as thus expressly admitted, the allegations set forth in paragraph 120 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

121. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on January 12, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on January 12, 2011. Defendants admit that the disbursement schedule dated August 17, 2011 for the sale of the policy accurately listed LST Holdings as the Seller and the Purchase Price as $595,000. Except as thus expressly admitted, the allegations set forth in paragraph 121 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

122. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 22, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on September 22, 2011. To the extent the allegations in the third sentence of paragraph 122 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated November 23, 2011 for the sale of the policy accurately listed LST II as the Seller, but they deny that the Purchase Price listed was $1,500,000. Except as thus expressly admitted, the allegations set forth in paragraph 122 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

123. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on June 20, 2011. To the extent the allegations in the third sentence of paragraph 123 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated November 23, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $675,000. Except as thus expressly admitted, the allegations set forth in paragraph 123 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

124. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 6, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on September 6, 2011. To the extent the allegations in the third sentence of paragraph 124 concern Plaintiff's motives for taking a particular action, Defendants lack

information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated November 29, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $1,100,000. Except as thus expressly admitted, the allegations set forth in paragraph 124 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

125. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on October 4, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on October 5, 2011. To the extent the allegations in the third sentence of paragraph 125 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated December 29, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $800,000. Except as thus expressly admitted, the allegations set forth in paragraph 125 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

126. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on December 21, 2010. Defendants admit that Lavastone issued a POR approval for the same policy on December 21, 2010. Defendants admit that the disbursement schedule dated February 21, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $615,000. Except as thus expressly admitted, the allegations set forth in paragraph 126 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

127. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on October 8, 2007. Defendants admit that Lavastone issued a POR approval for the same policy on October 9, 2007. To the extent the allegations in the third sentence of paragraph 127 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated January 28, 2008 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $3,527,700. Except as thus expressly admitted, the allegations set forth in paragraph 127 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

128. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on February 25, 2011. The allegations in the second and third sentences of paragraph 128 are denied. Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in the fourth sentence of paragraph 128. Except as thus expressly admitted, the allegations set forth in paragraph 128 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

129. Defendants admit that Coventry First was free to offer and to sell out of the box policies to AIG or any other buyer. Except as thus expressly admitted, the allegations set forth in paragraph 129 are denied.

130. The allegations set forth in paragraph 130 are denied.

131. The allegations set forth in paragraph 131 are denied.

132. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on March 10, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on March 11, 2009. To the extent the allegations in the third sentence of paragraph 132 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated May 18, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $838,575. Except as thus expressly admitted, the allegations set forth in paragraph 132 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

133. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on December 23, 2008. Defendants admit that Lavastone issued a POR approval for the same policy on December 23, 2008. To the extent the allegations in the third sentence of paragraph 133 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated April 10, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $5,005,000. Except as thus expressly admitted, the allegations set forth in paragraph 133 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

134. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on December 16, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on December 17, 2009. To the extent the allegations in the

third sentence of paragraph 134 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated April 30, 2010 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $2,100,000. Except as thus expressly admitted, the allegations set forth in paragraph 134 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

135. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on April 30, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on April 30, 2009. To the extent the allegations in the third sentence of paragraph 135 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated October 9, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,260,000. Except as thus expressly admitted, the allegations set forth in paragraph 135 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

136. Defendants admit that Lavastone issued a POR approval for an out of the box life policy on March 30, 2009. To the extent the allegations in the third sentence of paragraph 136 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated June 5, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,085,000. Except as thus

expressly admitted, the allegations set forth in paragraph 136 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

137. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on February 25, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on February 26, 2009. To the extent the allegations in the third sentence of paragraph 137 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated April 29, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $565,000. Except as thus expressly admitted, the allegations set forth in paragraph 137 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

138. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on February 25, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on February 26, 2009. To the extent the allegations in the third sentence of paragraph 138 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated April 29, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $505,000. Except as thus expressly admitted, the allegations set forth in paragraph 138 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

139. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on April 13, 2010. Defendants admit that Lavastone issued a POR approval for the same policy on April 13, 2010. To the extent the allegations in the third sentence of paragraph 139 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated October 4, 2010 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $550,000. Except as thus expressly admitted, the allegations set forth in paragraph 139 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

140. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on August 4, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on August 4, 2009. To the extent the allegations in the third sentence of paragraph 140 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated December 21, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,050,000. Except as thus expressly admitted, the allegations set forth in paragraph 140 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

141. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on August 4, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on August 4, 2009. To the extent the allegations in the third

sentence of paragraph 141 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated December 21, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,550,000. Except as thus expressly admitted, the allegations set forth in paragraph 141 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

142. Defendants admit that Lavastone issued a POR approval for an out of the box life policy on January 22, 2009. To the extent the allegations in the third sentence of paragraph 142 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated May 19, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,260,000. Except as thus expressly admitted, the allegations set forth in paragraph 142 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

143. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on March 10, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on March 11, 2009. To the extent the allegations in the third sentence of paragraph 143 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Except as thus expressly admitted, the allegations set forth in paragraph 143 are

denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

144. Defendants admit that Lavastone issued a POR approval for an out of the box life policy on April 22, 2009. To the extent the allegations in the third sentence of paragraph 144 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated September 7, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,350,000. Except as thus expressly admitted, the allegations set forth in paragraph 144 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

145. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on April 28, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on April 28, 2009. To the extent the allegations in the third sentence of paragraph 145 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated August 17, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,000,000. Except as thus expressly admitted, the allegations set forth in paragraph 145 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

146. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on May 5, 2009. Defendants admit that Lavastone issued a POR

approval for the same policy on May 5, 2009. To the extent the allegations in the third sentence of paragraph 146 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated November 4, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,580,000. Except as thus expressly admitted, the allegations set forth in paragraph 146 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

147. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on September 2, 2009. To the extent the allegations in the third sentence of paragraph 147 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated November 4, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $680,000. Except as thus expressly admitted, the allegations set forth in paragraph 147 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

148. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on June 11, 2009. To the extent the allegations in the third sentence of paragraph 148 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated September 1, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,501,000.

Except as thus expressly admitted, the allegations set forth in paragraph 148 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

149. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on July 28, 2009. To the extent the allegations in the third sentence of paragraph 149 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated September 29, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $985,000. Except as thus expressly admitted, the allegations set forth in paragraph 149 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

150. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on June 18, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on June 18, 2009. Defendants admit that the disbursement schedule dated August 26, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,595,600. Except as thus expressly admitted, the allegations set forth in paragraph 150 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

151. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on September 9, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on September 9, 2009. To the extent the allegations in the third sentence of paragraph 151 concern Plaintiff's motives for taking a particular action,

Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Except as thus expressly admitted, the allegations set forth in paragraph 151 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

152. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on July 15, 2009. Defendants admit that Lavastone issued a POR approval for the same policy on July 16, 2009. Defendants admit that the disbursement schedule dated October 2, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $3,250,455. Except as thus expressly admitted, the allegations set forth in paragraph 152 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

153. Defendants admit that Lavastone issued a POR approval for an out of the box life policy on March 30, 2005. To the extent the allegations in the third sentence of paragraph 153 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated February 18, 2008 for the sale of the policy accurately listed Coventry First as the Seller and the Purchase Price as $6,375,000. Except as thus expressly admitted, the allegations set forth in paragraph 153 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

154. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on February 15, 2006. Defendants admit that Lavastone issued a POR approval for the same policy on February 16, 2006. To the extent the allegations in the

third sentence of paragraph 154 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated September 29, 2006 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $825,000. Except as thus expressly admitted, the allegations set forth in paragraph 154 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

155. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on January 29, 2007. Defendants admit that Lavastone issued a POR approval for the same policy on January 31, 2007. Defendants deny the allegations in the third sentence of paragraph 155. Defendants admit that the disbursement schedule dated August 29, 2007 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,375,000. Except as thus expressly admitted, the allegations set forth in paragraph 155 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

156. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on October 30, 2006. Defendants admit that the disbursement schedule dated January 31, 2007 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,019,350. Except as thus expressly admitted, the allegations set forth in paragraph 156 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

157. Defendants admit that, pursuant to the terms of the Origination Agreements, Coventry First was free to offer and to sell a life policy that AIG disapproved (or that was

disapproved by operation of the Agreements) to AIG or any other buyer. Except as thus expressly admitted, the allegations set forth in paragraph 157 are denied.

158. The allegations set forth in paragraph 158 are denied.

159. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on July 13, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on July 16, 2009. Defendants admit that the disbursement schedule dated December 22, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $5,750,000. Except as thus expressly admitted, the allegations set forth in paragraph 159 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

160. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on September 10, 2010. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on September 16, 2010. Defendants admit that the disbursement schedule dated February 23, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $1,950,000. Except as thus expressly admitted, the allegations set forth in paragraph 160 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

161. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on February 25, 2008. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on March 12, 2008. Defendants admit that the disbursement schedule dated

September 16, 2008 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,380,000. Except as thus expressly admitted, the allegations set forth in paragraph 161 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

162. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on April 23, 2008. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on April 28, 2008. To the extent the allegations in the third sentence of paragraph 162 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated September 16, 2008 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $684,500. Except as thus expressly admitted, the allegations set forth in paragraph 162 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

163. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on April 20, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval. To the extent the allegations in the third sentence of paragraph 163 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated July 2, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,225,000. Except as thus expressly admitted, the allegations set forth in

paragraph 163 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

164. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on August 6, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on August 17, 2009. To the extent the allegations in the third sentence of paragraph 164 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated December 3, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $230,000. Except as thus expressly admitted, the allegations set forth in paragraph 164 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

165. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on January 28, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on February 5, 2009. Defendants admit that the disbursement schedule dated July 20, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,050,000. Except as thus expressly admitted, the allegations set forth in paragraph 165 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

166. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on March 30, 2009. Defendants admit that the policy was

deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on April 7, 2009. To the extent the allegations in the third sentence of paragraph 166 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated June 8, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $566,000. Except as thus expressly admitted, the allegations set forth in paragraph 166 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

167. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on May 11, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval. Defendants admit that the disbursement schedule dated July 20, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $3,750,000. Except as thus expressly admitted, the allegations set forth in paragraph 167 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

168. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 3, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on October 1, 2009. Defendants admit that the disbursement schedule dated November 10, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $577,630. Except as thus expressly admitted, the allegations set forth in paragraph 168 are denied.

Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

169. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on October 6, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on October 22, 2009. Defendants admit that the disbursement schedule dated January 28, 2010 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $199,000. Except as thus expressly admitted, the allegations set forth in paragraph 169 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

170. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on November 10, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on November 18, 2009. Defendants admit that the disbursement schedule dated April 2, 2010 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $213,700. Except as thus expressly admitted, the allegations set forth in paragraph 170 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

171. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on December 28, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on December 31, 2009. To the extent the allegations in the third sentence of paragraph 171 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge

sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated September 21, 2010 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $278,000. Except as thus expressly admitted, the allegations set forth in paragraph 171 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

172. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 16, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on October 13, 2009. Defendants admit that the disbursement schedule dated December 2, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $2,540,000. Except as thus expressly admitted, the allegations set forth in paragraph 172 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

173. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on July 6, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on July 13, 2009. To the extent the allegations in the third sentence of paragraph 173 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated January 6, 2010 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,645,000. Except as thus expressly admitted, the allegations set forth in paragraph 173 are denied. Defendants deny that they made any

misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

174. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 11, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on October 12, 2009. Defendants admit that the disbursement schedule dated January 26, 2010 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $1,205,000. Except as thus expressly admitted, the allegations set forth in paragraph 174 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

175. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on April 24, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval. To the extent the allegations in the third sentence of paragraph 175 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated August 10, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $520,000. Except as thus expressly admitted, the allegations set forth in paragraph 175 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

176. Defendants admit that Lavastone issued a POR approval for a life policy that post-dated its disapproval of that policy on September 4, 2009. To the extent the allegations in the third sentence of paragraph 176 concern Plaintiff's motives for taking a particular action,

Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Defendants admit that the disbursement schedule dated December 16, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $324,000. Except as thus expressly admitted, the allegations set forth in paragraph 176 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

177. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on April 20, 2010. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on April 28, 2010. To the extent the allegations in the third sentence of paragraph 177 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Except as thus expressly admitted, the allegations set forth in paragraph 177 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

178. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on October 1, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on October 16, 2009. Defendants admit that the disbursement schedule dated December 1, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $255,000. Except as thus expressly admitted, the allegations set forth in paragraph 178 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

179. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on May 6, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on May 12, 2009. Defendants admit that the disbursement schedule dated October 13, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $200,000. Except as thus expressly admitted, the allegations set forth in paragraph 179 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

180. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on November 2, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on November 17, 2009. Defendants admit that the disbursement schedule dated February 9, 2010 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $544,514. Except as thus expressly admitted, the allegations set forth in paragraph 180 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

181. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 3, 2009. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on October 2, 2009. Defendants admit that the disbursement schedule dated November 10, 2009 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $368,420. Except as thus expressly admitted, the allegations set forth in paragraph 181 are denied.

Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

182. Defendants admit that Coventry First submitted an out of the box life policy to Lavastone for pre-offer review on October 22, 2010. Defendants admit that the policy was deemed disapproved, and that Lavastone issued a POR approval for the policy that post-dated its disapproval on October 26, 2010. Defendants admit that Coventry First again submitted the life policy to Lavastone for a pre-offer review on April 20, 2011. Defendants admit that Lavastone again issued a POR approval for the same policy. Defendants admit that the disbursement schedule dated August 19, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $1,650,000. Except as thus expressly admitted, the allegations set forth in paragraph 182 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

183. The allegations set forth in paragraph 183 are denied.

184. Defendants admit that Lavastone developed extensive experience in the life settlement business during its contractual relationship with Coventry First. Except as thus expressly admitted, the allegations set forth in paragraph 184 are denied.

185. Defendants admit that Plaintiff provided certain underwriting information to Coventry First. Except as thus expressly admitted, the allegations set forth in paragraph 185 are denied.

186. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in paragraph 186.

187. The allegations set forth in paragraph 187 are denied.

188. The allegations set forth in paragraph 188 are denied.

189. The allegations set forth in paragraph 189 are denied.

190. Defendants admit that one of the Eligibility Criteria defined in the 2010 Wells Fargo Origination Agreement is that a life policy must meet a minimum "Probabilistic Yield" of 10%. Except as thus expressly admitted, the allegations set forth in paragraph 190 are denied.

191. The allegations set forth in paragraph 191 are denied.

192. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on September 16, 2008. Defendants admit that Lavastone issued a POR approval for the policy on September 16, 2008. Defendants admit that the disbursement schedule dated September 16, 2008 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $701,000. Except as thus expressly admitted, the allegations set forth in paragraph 192 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

193. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on May 5, 2008. Defendants admit that Lavastone issued a POR approval for the same policy on May 7, 2008. Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in the fourth sentence of paragraph 193. Defendants admit that the disbursement schedule dated September 18, 2008 for the sale of the policy accurately listed LST I as the Seller and the Purchase Price as $766,000. Except as thus expressly admitted, the allegations set forth in paragraph 193 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

194. The allegations set forth in paragraph 194 are denied.

195. The allegations set forth in paragraph 195 are denied.

196. The allegations set forth in paragraph 196 are denied.

197. The allegations set forth in paragraph 197 are denied.

198. The allegations set forth in paragraph 198 are denied.

199. The allegations set forth in paragraph 199 are denied.

200. Defendants admit that under the 2010 Wells Fargo Origination Agreement, AIG agreed to reimburse certain broker fees in connection with policies it purchased. Except as thus expressly admitted, the allegations set forth in paragraph 200 are denied.

201. The allegations set forth in paragraph 201 are denied.

202. The allegations set forth in paragraph 202 are denied.

203. Defendants admit that the beneficiary of an IB interest may claim a portion of a life policy's death benefit at the time of the insured's death, if eligible. Except as thus expressly admitted, the allegations set forth in paragraph 203 are denied.

204. The allegations set forth in paragraph 204 are denied.

205. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on June 7, 2011. Defendants admit that Lavastone issued a POR approval for the same policy on June 7, 2011. Defendants admit that the disbursement schedule dated November 7, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $70,000. To the extent the allegations in the third sentence of paragraph 205 concern Plaintiff's motives for taking a particular action, Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in that sentence. Except as thus expressly admitted, the allegations set forth in paragraph 205 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

206. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on June 30, 2011. Defendants admit that the disbursement schedule dated September 16, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $315,000. Except as thus expressly admitted, the allegations set forth in paragraph 206 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

207. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on February 8, 2010. Defendants admit that Lavastone issued a POR approval for the same policy on February 12, 2010. Defendants admit that the disbursement schedule dated November 23, 2011 for the sale of the policy accurately listed the Purchase Price as $795,000. Except as thus expressly admitted, the allegations set forth in paragraph 207 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

208. Defendants admit that Coventry First submitted a life policy to Lavastone for pre-offer review on December 27, 2010. Defendants admit that Lavastone issued a POR approval for the same policy on December 28, 2010. Defendants admit that a $290,000 loan was taken out on the policy. Defendants admit that the disbursement schedule dated September 1, 2011 for the sale of the policy accurately listed LST II as the Seller and the Purchase Price as $42,800. Except as thus expressly admitted, the allegations set forth in paragraph 208 are denied. Defendants deny that they made any misrepresentation or committed any other misconduct in connection with the policy referenced in this paragraph.

209. The allegations set forth in paragraph 209 are denied.

210. The allegations set forth in paragraph 210 are denied.

211. The allegations set forth in paragraph 211 are denied.

212. The allegations set forth in paragraph 212 are denied.

213. Defendants admit that Montgomery Capital is the sole member and owner of Coventry First, LST I, LST II, and LST Holdings. Defendants admit that Montgomery Capital is owned in part by Alan Buerger, Constance Buerger, and Reid Buerger. Except as thus expressly admitted, the allegations set forth in paragraph 213 are denied.

214. Defendants admit that LST has properly distributed some of its profits to Montgomery Capital. Defendants admit that for fiscal year 2006, LST I LLC's net gain from the sale of insurance policies was $226,478,187. Except as thus expressly admitted, the allegations set forth in paragraph 214 are denied.

215. The allegations set forth in paragraph 215 are denied.

216. The allegations set forth in paragraph 216 are denied.

217. The allegations set forth in paragraph 217 are denied.

218. The allegations set forth in paragraph 218 are denied.

219. The allegations set forth in paragraph 219 are denied.

220. The allegations set forth in paragraph 220 are denied.

221. The allegations set forth in paragraph 221 are denied.

222. The allegations set forth in paragraph 222 are denied.

223. The allegations set forth in paragraph 223 are denied.

224. The allegations set forth in paragraph 224 are denied.

225. Defendants admit that Plaintiff stopped buying life policies from Coventry First in 2011. Defendants admit that Coventry First received more than $1 billion in origination-related

and servicing fees from Plaintiff from 2001 to 2011. Except as thus expressly admitted, the allegations set forth in paragraph 225 are denied.

226. Defendants admit that Miravast Asset Management LLC ("Miravast") was formed in 2012. Defendants admit that Miravast provides advice regarding investments in life policies. Defendants admit that Coventry First and Miravast approached Berkshire Hathaway about purchasing a life settlement portfolio. Defendants admit that Miravast focuses, in part, on finding institutional investors that wish to invest in life policies, structuring purchases of significant portfolios for those investors, and helping to manage the resultant portfolio. Except as thus expressly admitted, the allegations set forth in paragraph 226 are denied.

227. Defendants admit that Bill Taylor is Miravast's President, and previously was a senior vice president and chief underwriting officer at AIG. Defendants admit that Taylor dealt with Reid Buerger directly regarding the parties' working relationship and specific policies. Defendants admit that David Beckelman is Miravast's Chief Financial Officer and Chief Actuarial Officer, and formerly was a senior vice president and chief life actuary at AIG. Defendants admit that Kenneth Zinn is Miravast's Vice President and Medical Director, and formerly was vice president of medical underwriting at AIG. Except as thus expressly admitted, the allegations set forth in paragraph 227 are denied.

228. The allegations set forth in paragraph 228 are denied.

229. Defendants admit that AIG used skilled medical underwriters, life underwriters, and business personnel throughout each life policy purchase. Defendants admit that Plaintiff conducted annual audits of Coventry First's origination and servicing activities. Defendants deny the allegation that any Defendant engaged in fraudulent or otherwise improper conduct of

any kind. Except as thus expressly admitted, the allegations set forth in paragraph 229 are denied.

230. The allegations set forth in paragraph 230 are denied.

231. Defendants admit that two policies sold to Plaintiff were brokered by a firm associated with an individual who was indicted in 2012. Except as thus expressly admitted, the allegations set forth in the paragraph 231 are denied.

232. The allegations set forth in paragraph 232 are denied.

233. Defendants admit that Plaintiff performed an audit in August 2012. Defendants admit that Plaintiff was given access to information that did not include the price Coventry First paid the original seller. Except as thus expressly admitted, the allegations set forth in paragraph 233 are denied.

234. Defendants admit that in April 2013, Plaintiff's employees reviewed Coventry First's files related to some life policies Coventry First had sold to Plaintiff. Defendants admit that in May 2013 Plaintiff sent a letter accusing Coventry First of contractual breaches. Except as thus expressly admitted, the allegations set forth in paragraph 234 are denied.

235. Defendants admit that Coventry First and Plaintiff engaged in discussions in 2013 and 2014 to resolve disagreements about each party's compliance with the Origination Agreements, as well as potential changes to certain aspects of those agreements. Except as thus expressly admitted, the allegations set forth in paragraph 235 are denied.

236. The allegations set forth in paragraph 236 are denied. Regarding the allegations in footnote 13, Defendants admit that a motion to dismiss was denied on February 27, 2013 in *Griswold v. Coventry First LLC*, No. 10-5964 (E.D. Pa. Feb. 27, 2013) (Dkt. 54). Defendants

deny that the ruling on that motion has any significance to this case. Except as thus expressly admitted, the allegations set forth in paragraph 236 are denied.

237. Defendants admit that Coventry First entered into the Origination Agreements, the Servicing Agreements, and the Origination Confidentiality Agreement with Plaintiff. Except as thus expressly admitted, the allegations set forth in paragraph 237 are denied.

238. The allegations set forth in paragraph 238 are denied.

239. The allegations set forth in paragraph 239 are denied.

240. The allegations set forth in paragraph 240 are denied.

241. Defendants admit that Alan Buerger, Reid Buerger, and Krista Buerger participated in the sale of life policies to Plaintiff under the Origination Agreements. Except as thus expressly admitted, the allegations set forth in paragraph 241 are denied.

242. The allegations set forth in paragraph 242 are denied.

243. Defendants admit that Alan Buerger was in contact with Lavastone during the parties' relationship to discuss strategic and operational issues. Defendants admit that Alan Buerger was involved with certain details of the parties' transactions, including certain contract negotiations and certain issues regarding eligibility and pricing criteria. Defendants admit that Alan Buerger from time to time discussed with Plaintiff certain issues relating to broker compensation, policy pricing, and fees to be paid for policies. Except as thus expressly admitted, the allegations set forth in paragraph 243 are denied.

244. Defendants admit that Reid Buerger discussed with Plaintiff the negotiation of certain of the parties' agreements, including certain of the Origination Agreements. Defendants admit that Reid Buerger also has discussed with Plaintiff purchase prices for individual Life Policies. Except as thus expressly admitted, the allegations set forth in paragraph 244 are denied.

245. Defendants admit that Krista Lake is the wife of Reid Buerger. Except as thus expressly admitted, the allegations set forth in paragraph 245 are denied.

246. Defendants admit that Constance Buerger is the wife of Alan Buerger. Except as thus expressly admitted, the allegations set forth in paragraph 246 are denied.

247. Defendants admit that Reid Buerger invoked his Fifth Amendment rights in response to certain questions posed by the NYAG as part of its investigation. Defendants deny that the NYAG's investigation or Mr. Buerger's testimony as part of that investigation has any relevance to this case. Except as thus expressly admitted, the allegations set forth in paragraph 247 are denied.

248. The allegations set forth in paragraph 248 are denied.

249. The allegations set forth in paragraph 249 are denied.

250. Defendants admit that, in October 2006, the NYAG brought a lawsuit that included claims against Coventry First, Montgomery Capital, and Reid Buerger. Defendants admit that the NYAG alleged (without basis) that the defendants in that case had engaged in fraudulent conduct. Defendants further admit that Reid Buerger invoked his Fifth Amendment rights in response to certain questions from the NYAG's office. Defendants deny, however, that Mr. Buerger's invocation of his Fifth Amendment rights prior to the filing of the NYAG's complaint has any significance in this case. Except as thus expressly admitted, the allegations set forth in paragraph 250 are denied.

251. Defendants admit that Coventry First made a gross offer of $102,000 for a policy with a death benefit of $400,000, and that that offer was accepted by the seller. Except as thus expressly admitted, the allegations set forth in paragraph 251 are denied. Defendants deny that this policy has any relevance to this case.

252. Defendants admit that Coventry First made gross offers for certain policies. Defendants deny that gross offers, which are standard industry practice, are improper in any respect. Defendants admit that Coventry First made a gross offer of $3.1 million for a $10 million policy. Except as thus expressly admitted, the allegations set forth in paragraph 252 are denied. Defendants deny that this policy has any relevance to this case.

253. Defendants lack knowledge sufficient to admit or deny whether an advisor of the seller subsequently inquired of these brokers, or the substance of any such inquiry, and on this basis deny the allegations in the second sentence of paragraph 253. Defendants deny the remaining allegations in paragraph 253, and deny that this policy has any relevance to this case.

254. Defendants admit that Coventry First entered into a settlement with the NYAG in 2009 that did not involve an assessment of any fine or penalty. Defendants admit that pursuant to its settlement agreement with the NYAG, Coventry First agreed to make monetary payments totaling approximately $12 million. Defendants deny that Coventry First's settlement with the NYAG has any significance in this case. Except as thus expressly admitted, the allegations set forth in paragraph 254 are denied.

255. Defendants admit that the Florida Office of Insurance Regulation conducted an investigation relating to life settlements in or about 2007. Defendants admit that Coventry First entered into a settlement with the Florida Office of Insurance Regulation pursuant to which Coventry First agreed to pay approximately $1.5 million for the costs of the investigation. Defendants deny that the Florida Office of Insurance Regulation found that Coventry First committed any misconduct, or assessed any fine or penalty. Defendants deny that the Florida Office of Insurance Regulation's investigation or Coventry First's settlement with the Florida

Office of Insurance Regulation has any significance in this case. Except as thus expressly admitted, the allegations set forth in paragraph 255 are denied.

256. Defendants admit that in 2009 Coventry First entered into a consent order with the Ohio Department of Insurance concerning nine policies. Defendants admit that in 2008 Coventry First entered into an agreed order with the Kentucky Department of Insurance, which involved no monetary payment. Defendants admit that in 2008 Coventry First paid $15,000 pursuant to a consent order with the Indiana Department of Insurance. Defendants admit that in 2005 Coventry First paid $7,500 pursuant to a consent order with the Texas Department of Insurance. Defendants admit that Coventry First is subject to routine examinations by regulators around the United States. Defendants deny that any of the matters discussed in paragraph 256 has any significance in this case. Except as thus expressly admitted, the allegations set forth in paragraph 256 are denied.

257. Defendants admit that a putative class action complaint was filed in *Griswold v. Coventry First LLC*, No. 10 Civ. 5964 (E.D. Pa. 2010). Defendants admit that the complaint alleged (without basis) misconduct by the defendants therein. Defendants admit that the District Court denied the *Griswold* defendants' motion to dismiss and to compel arbitration, and that that ruling was affirmed on appeal. Defendants deny that *Griswold* has any relevance to this case. Except as thus expressly admitted, the allegations set forth in paragraph 257 are denied.

258. Defendants admit that Coventry First, Montgomery Capital, LST I, and the Coventry Group, Inc. were sued by the plaintiffs in *Ritchie Risk-Link Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, No. 09 Civ. 1086 (S.D.N.Y.). On October 20, 2014, the Court entered judgment in favor of Coventry First and its affiliates. Except as thus expressly admitted, the allegations set forth in paragraph 258 are denied.

259. The allegations set forth in paragraph 259 are denied.

260. The allegations set forth in paragraph 260 are denied.

261. The allegations set forth in paragraph 261 are denied.

262. The allegations set forth in paragraph 262 are denied.

263. The allegations set forth in paragraph 263 are denied.

**Count I**

264. Defendants incorporate by reference herein their responses to the allegations set forth above.

265. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in paragraph 265.

266. Defendants admit the allegations in paragraph 266.

267. The allegations set forth in paragraph 267 are denied.

268. Defendants admit that Coventry First, LST I, LST II, LST Holdings, and Montgomery Capital are distinct, affiliated entities. Except as thus expressly admitted, the allegations set forth in paragraph 268 are denied.

269. Defendants admit the allegations in paragraph 269.

270. Defendants admit that LST I, LST II, and LST Holdings purchase and sell life insurance policies. Defendants admit that Montgomery Capital owns other companies, and provides management services to affiliated companies for a fee. Except as thus expressly admitted, the allegations set forth in paragraph 270 are denied.

271. The allegations set forth in paragraph 271 are denied.

272. The allegations set forth in paragraph 272 are denied.

273. The allegations set forth in paragraph 273 are denied.

274. The allegations set forth in paragraph 274 are denied.

275. The allegations set forth in paragraph 275 are denied.

276. The allegations set forth in paragraph 276 are denied.

277. The allegations set forth in paragraph 277 are denied.

278. The allegations set forth in paragraph 278 are denied.

279. The allegations set forth in paragraph 279 are denied.

280. The allegations set forth in paragraph 280 are denied.

281. The allegations set forth in paragraph 281 are denied.

282. The allegations set forth in paragraph 282 are denied.

283. The allegations set forth in paragraph 283 are denied.

284. The allegations set forth in paragraph 284 are denied.

285. The allegations set forth in paragraph 285 are denied.

286. The allegations set forth in paragraph 286 are denied.

287. The allegations set forth in paragraph 287 are denied.

288. The allegations set forth in paragraph 288 are denied.

289. The allegations set forth in paragraph 289 are denied.

290. Defendants lack knowledge or information sufficient to admit or deny, and on that basis deny, the allegations set forth in paragraph 290.

291. The allegations set forth in paragraph 291 are denied.

292. Defendants admit that for certain policies originated by Coventry First, the relevant parties executed a Tripartite Entitlement Order instructing the Fiscal Agent to pay specified funds to specified parties on the relevant escrow date. Defendants admit that on the specified escrow release date, the Fiscal Agent usually would facilitate the transfer of funds

authorized by the relevant Tripartite Entitlement Order. Defendants lack information or knowledge sufficient to respond to, and on that basis deny, the allegations in the third sentence of paragraph 292. Except as thus expressly admitted, the allegations set forth in paragraph 292 are denied. Defendants deny that they made any misrepresentation or committed any fraud or other misconduct in connection with the Tripartite Entitled Orders referenced in this paragraph.

a. Defendants admit that by Tripartite Entitlement Order dated August 31, 2007, Coventry First authorized U.S. Bank N.A. to transfer $531,000 from an account funded by Lavastone to LST I as the seller of a life insurance policy, and an additional payment for originator and broker's fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(a) are denied.

b. Defendants admit that by Tripartite Entitlement Order dated May 19, 2009, Coventry First instructed Wells Fargo Bank, N.A. to transfer $838,575 from an account funded by Lavastone to LST I as the seller of a life insurance policy, and an additional payment for originator and broker's fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(b) are denied.

c. Defendants admit that by Tripartite Entitlement Order dated August 26, 2009, Coventry First authorized Wells Fargo Bank, N.A. to transfer $1,900,000 from an account funded by Lavastone to LST I as the seller of a life insurance policy, and an additional payment for originator and broker's fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(c) are denied.

d. Defendants admit that by Tripartite Entitlement Order, Coventry First authorized Wells Fargo Bank, N.A. to transfer $1,400,000 from an account funded by Lavastone to LST I as the seller of a life insurance policy, and an additional payment for originator

fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(d) are denied.

e. Defendants admit that by Tripartite Entitlement Order dated April 16, 2009, Coventry First authorized Wells Fargo Bank, N.A. to transfer $2,145,000 from an account funded by Lavastone to LST I as the seller of a life insurance policy, and an additional payment for originator fees and expenses. Except as thus expressly admitted, the allegations set forth in paragraph 292(e) are denied.

f. Defendants admit that by Tripartite Entitlement Order dated April 13, 2009, Coventry First authorized Wells Fargo Bank, N.A. to transfer $5,005,000 from an account funded by Lavastone to LST I as the seller of a life insurance policy, and an additional payment for originator and broker's fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(f) are denied.

g. Defendants admit that by Tripartite Entitlement Order dated April 30, 2010, Coventry First authorized Wells Fargo Bank, N.A. to transfer $2,100,000 from an account funded by Lavastone to LST II as the seller of a life insurance policy, and an additional payment for originator and broker's fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(g) are denied.

h. Defendants admit that by Tripartite Entitlement Order dated December 23, 2007, Coventry First authorized Wells Fargo Bank, N.A. to transfer $5,750,000 from an account funded by Lavastone to LST I as the seller of a life insurance policy, and an additional payment for originator, broker's, and incentive fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(h) are denied.

i. Defendants admit that by Tripartite Entitlement Order dated February 24, 2011, Coventry First authorized Wells Fargo Bank, N.A. to transfer $1,950,000 from an account funded by Lavastone to LST II as the seller of a life insurance policy, and an additional payment for originator and broker's fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(i) are denied.

j. Defendants admit that by Tripartite Entitlement Order dated September 17, 2008, Coventry First authorized U.S. Bank N.A. to transfer $2,380,000 from an account funded by Lavastone to LST I as the seller of a life insurance policy, and an additional payment for originator and incentive fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(j) are denied.

k. Defendants admit that by Tripartite Entitlement Order dated December 30, 2011, Coventry First authorized Wells Fargo Bank, N.A. to transfer $887,875 from an account funded by Lavastone to LST II as the seller of a life insurance policy, and an additional payment for an originator fee. Except as thus expressly admitted, the allegations set forth in paragraph 292(k) are denied.

l. Defendants admit that by Tripartite Entitlement Order dated August 25, 2011, Coventry First instructed Wells Fargo Bank, N.A. to transfer $740,000 from an account funded by Lavastone to LST Holdings as the seller of a life insurance policy, and an additional payment for originator, incentive, and broker's fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(l) are denied.

m. Defendants admit that by Tripartite Entitlement Order dated August 22, 2011, Coventry First instructed Wells Fargo Bank, N.A. to transfer $595,000 from an account funded by Lavastone to LST Holdings as the seller of a life insurance policy, and an

additional payment for originator, incentive, and broker's fees. Except as thus expressly admitted, the allegations set forth in paragraph 292(m) are denied.

293. The allegations set forth in paragraph 293 are denied.

294. The allegations set forth in paragraph 294 are denied.

295. The allegations set forth in paragraph 295 are denied.

296. The allegations set forth in paragraph 296 are denied.

297. The allegations set forth in paragraph 297 are denied.

298. The allegations set forth in paragraph 298 are denied.

299. The allegations set forth in paragraph 299 are denied.

300. The allegations set forth in paragraph 300 are denied.

301. The allegations set forth in paragraph 301 are denied.

302. The allegations set forth in paragraph 302 are denied.

303. The allegations set forth in paragraph 303 are denied.

304. The allegations set forth in paragraph 304 are denied.

305. No response to paragraph 305 is required because Plaintiff has abandoned its allegations that Defendants obstructed justice.

306. The allegations set forth in paragraph 306 are denied.

307. The allegations set forth in paragraph 307 are denied.

308. The allegations set forth in paragraph 308 are denied.

309. The allegations set forth in paragraph 309 are denied.

310. The allegations set forth in paragraph 310 are denied.

311. The allegations set forth in paragraph 311 are denied.

312. The allegations set forth in paragraph 312 are denied.

313. The allegations set forth in paragraph 313 are denied.

314. The allegations set forth in paragraph 314 are denied.

315. The allegations set forth in paragraph 315 are denied.

316. The allegations set forth in paragraph 316 are denied.

317. The allegations set forth in paragraph 317 are denied.

318. The allegations set forth in paragraph 318 are denied.

**Count II**

319. Defendants incorporate by reference herein their responses to the allegations set forth above.

320. The allegations set forth in paragraph 320 are denied.

321. The allegations set forth in paragraph 321 are denied.

322. The allegations set forth in paragraph 322 are denied.

323. The allegations set forth in paragraph 323 are denied.

324. The allegations set forth in paragraph 324 are denied.

325. The allegations set forth in paragraph 325 are denied.

**Count III**

326. Defendants incorporate by reference herein their responses to the allegations set forth above.

327. The allegations set forth in paragraph 327 are denied.

328. The allegations set forth in paragraph 328 are denied.

329. The allegations set forth in paragraph 329 are denied.

330. The allegations set forth in paragraph 330 are denied.

**Count IV**

331. Defendants incorporate by reference herein their responses to the allegations set forth above.

332. The allegations set forth in paragraph 332 are denied.

333. The allegations set forth in paragraph 333 are denied.

334. The allegations set forth in paragraph 334 are denied.

335. The allegations set forth in paragraph 335 are denied.

336. The allegations set forth in paragraph 336 are denied.

**Count V**

337. Defendants incorporate by reference herein their responses to the allegations set forth above.

338. Defendants admit the allegations set forth in paragraph 338.

339. The allegations set forth in paragraph 339 are denied.

340. The allegations set forth in paragraph 340 are denied.

341. The allegations set forth in paragraph 341 are denied.

342. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Agreements accurately or completely in paragraph 342. The allegations set forth in paragraph 342 are denied.

343. Defendants admit that certain "out of the box" life policies were sold to Plaintiff for prices higher than Coventry First initially paid for the policies. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Agreements accurately or completely in paragraph 343. Except as thus expressly admitted, the allegations set forth in paragraph 343 are denied.

344. Defendants admit that certain "out of the box" life policies were sold to AIG after being held for a period of time. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Agreements accurately or completely in paragraph 344. Except as thus expressly admitted, the allegations set forth in paragraph 344 are denied.

345. The allegations set forth in paragraph 345 are denied.

346. Defendants admit that Plaintiff provided Coventry First with certain information that was within the scope of the parties' confidentiality agreements. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Agreements accurately or completely in paragraph 346. Except as thus expressly admitted, the allegations set forth in paragraph 346 are denied.

347. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Agreements accurately or completely in paragraph 347. The allegations set forth in paragraph 347 are denied.

348. The allegations set forth in paragraph 348 are denied.

349. Defendants admit that Plaintiff provided Coventry First with certain information that was within the scope of the parties' confidentiality agreements. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Confidentiality Agreement accurately or completely in paragraph 349. Except as thus expressly admitted, the allegations set forth in paragraph 349 are denied.

**Count VI**

350. Defendants incorporate by reference herein their responses to the allegations set forth above.

351. Defendants deny that the allegations in paragraph 351 accurately or completely describe the implied covenant of good faith and fair dealing. The allegations set forth in paragraph 351 are denied.

352. The allegations set forth in paragraph 352 are denied.

353. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Agreements accurately or completely in paragraph 353. The allegations set forth in paragraph 353 are denied.

354. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Agreements or the Origination Confidentiality Agreements accurately or completely in paragraph 354. The allegations set forth in paragraph 354 are denied.

355. Defendants deny that Plaintiff has characterized the pertinent portions of the Origination Agreements or the Servicing Agreements accurately or completely in paragraph 355. The allegations set forth in paragraph 355 are denied.

356. The allegations set forth in paragraph 356 are denied.

357. The allegations set forth in paragraph 357 are denied.

## Count VII

358. No response to paragraphs 358-65 is required, as Plaintiff's claim for indemnity has been dismissed.

## Count VIII

366. Defendants incorporate by reference herein their responses to the allegations set forth above.

367. The allegations set forth in paragraph 367 are denied.

368. The allegations set forth in paragraph 368 are denied.

369. The allegations set forth in paragraph 369 are denied.

370. The allegations set forth in paragraph 370 are denied.

371. The allegations set forth in paragraph 371 are denied.

**Count IX**

372. No response to paragraphs 372-78 is required, as Plaintiff's claim for breach of the faithless servant doctrine has been dismissed.

**Count X**

379. Defendants incorporate by reference herein their responses to the allegations set forth above.

380. The allegations set forth in paragraph 380 are denied.

381. The allegations set forth in paragraph 381 are denied.

382. The allegations set forth in paragraph 382 are denied.

383. The allegations set forth in paragraph 383 are denied.

384. The allegations set forth in paragraph 384 are denied.

385. The allegations set forth in paragraph 385 are denied.

386. Paragraph 386 is blank and therefore no response is necessary.

**Count XI**

387. Defendants incorporate by reference herein their responses to the allegations set forth above.

388. The allegations set forth in paragraph 388 are denied.

389. The allegations set forth in paragraph 389 are denied.

390. The allegations set forth in paragraph 390 are denied.

391. The allegations set forth in paragraph 391 are denied.

392. The allegations set forth in paragraph 392 are denied.

393. The allegations set forth in paragraph 393 are denied.

**Count XII**

394. No response to paragraphs 394-99 is required, as Plaintiff's claim for tortious interference with contract has been dismissed.

**Count XIII**

400. Defendants incorporate by reference herein their responses to the allegations set forth above.

401. The allegations set forth in paragraph 401 are denied.

402. The allegations set forth in paragraph 402 are denied.

403. The allegations set forth in paragraph 403 are denied.

404. The allegations set forth in paragraph 404 are denied.

405. The allegations set forth in paragraph 405 are denied.

406. The allegations set forth in paragraph 406 are denied.

407. The allegations set forth in paragraph 407 are denied.

The allegations set forth in the "WHEREFORE" clause are denied, and Defendants deny that Plaintiff is entitled to any of the relief requested.

To the extent there are well-pleaded allegations in Appendix A to the complaint, Defendants deny them. Defendants specifically deny all allegations in the column of Appendix A labeled "Purpose," and deny that any of the purported communications listed in Appendix A constitute RICO predicate acts.

Defendants expressly deny all allegations contained in the Complaint that are not specifically admitted herein.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants incorporate by reference herein their responses to the allegations set forth above. All defenses are asserted by each Defendant. Without any admission as to the burden of proof or as to any of the allegations in the Complaint, Defendants assert the following additional defenses:

### First Defense

AIG's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

AIG's claims are barred in whole or in part by the doctrine of estoppel.

### Third Defense

AIG's claims are barred in whole or in part by the doctrine of waiver.

### Fourth Defense

AIG's claims are barred in whole or in part by the doctrine of modification.

### Fifth Defense

AIG's claims are barred in whole or in part by the doctrine of acquiescence.

### Sixth Defense

AIG's claims are barred in whole or in part by the doctrine of ratification.

### Seventh Defense

AIG's claims are barred in whole or in part by the doctrine of consent.

### Eighth Defense

AIG's claims are barred in whole or in part by the doctrine of voluntary payment.

**Ninth Defense**

AIG's claims are barred in whole or in part by the doctrines of substituted contract or superseded contract.

**Tenth Defense**

AIG's claims are barred in whole or in part by the doctrine of election of remedies.

**Eleventh Defense**

AIG's equitable claims are barred in whole or in part by the existence of an adequate remedy at law.

**Twelfth Defense**

AIG's claims are barred in whole or in part by the doctrine of unclean hands. AIG's management has long understood that Coventry First had the legal right to—and did—mark up certain Life Policies that were sold to AIG, and that Coventry First had certain other rights under the parties' contracts. AIG was an active, voluntary, and knowing counterparty in the parties' transactions, which resulted in AIG acquiring a large life settlements portfolio that exceeded AIG's profitability targets. AIG's management knowingly agreed to performance under a particular interpretation of the parties' contractual duties vis-à-vis each other. Nothing was wrong with any of this. For purposes of this lawsuit, however, AIG now claims that the parties' agreed-upon course of conduct constituted wrongdoing. If AIG's erroneous claims were credited, then AIG was an active, voluntary, and equal participant in the alleged wrongdoing, and AIG induced Coventry First to continue selling it Life Policies according to the parties' prior dealings. Alternatively, if AIG's erroneous claims were credited, then AIG dishonestly concealed one interpretation of the parties' legal duties while wrongfully inducing Coventry First to continue performing under a different understanding of those duties. In addition, AIG is now

wrongfully trying to use this Court and this litigation to avoid contract terms that have long been acknowledged features of the parties' relationship, but which AIG's new management has found to interfere with AIG's desire to maximize its profits from re-selling or securitizing its life settlements portfolio. Unclean hands bars AIG's attempt to do so.

**Thirteenth Defense**

AIG's claims are barred in whole or in part by the doctrine of *in pari delicto*.

**Fourteenth Defense**

AIG's claims are barred in whole or in part by applicable statutes of limitations.

**Fifteenth Defense**

AIG's claims are barred in whole or in part by the doctrine of laches.

**Sixteenth Defense**

AIG's claims are barred in whole or in part by its own prejudicial delay.

**Seventeenth Defense**

AIG's claims are barred in whole or in part by its own breaches of contract.

**Eighteenth Defense**

AIG's claims are barred in whole or in part by the doctrine of setoff.

**Nineteenth Defense**

AIG's claims are barred in whole or in part by its own comparative fault or negligence.

**Twentieth Defense**

AIG's claims are barred in whole or in part by intervening, independent, and/or superseding causes.

**Twenty-First Defense**

The Complaint fails to plead the alleged fraud or misrepresentations with the required particularity under Rule 9(b) of the Federal Rules of Civil Procedure.

**Twenty-Second Defense**

AIG's claims are barred in whole or in part by its failure to mitigate.

**Twenty-Third Defense**

AIG's claims are barred in whole or in part by the doctrine of mutual mistake.

**Twenty-Fourth Defense**

AIG's claims are barred in whole or in part because of AIG's failure to comply with a condition precedent. In particular, the Origination Agreement contains the following requirement:

> SECTION 3.05. Notice of Breach. If the Purchaser, the Fiscal Agent or any Originator discovers any breach of any Originator's or the Purchaser's representations, warranties or covenants set forth in this Agreement which materially and adversely affects the interests of another party hereto (or any assignee or third party beneficiary of this Agreement), such party shall inform the others promptly, in writing, thereof. Notwithstanding any provision of this Agreement to the contrary, if the Purchaser, any assignee or third party beneficiary of this Agreement discovers or receives notice of any breach of any Originator's representations, warranties or covenants set forth in this Agreement which materially and adversely affects the interests of the Purchaser (or of any assignee or third party beneficiary) and does not deliver notice of its intention to invoke or avail itself of the remedies afforded by this Agreement with respect to such breach within six (6) months of such discovery or receipt of such notice, then such breach (and all claims with respect to any resulting damages, losses relating thereto or arising therefrom or in connection therewith) shall have been waived by such party in all respects and such party will thereafter have no right to take any action, invoke any remedy or recover any losses or damages with respect thereto.

AIG received notice of purported facts that it now contends constituted material breaches of representations, warranties, or covenants set forth in the Origination Agreement, or that fundamentally sound in alleged breaches of such representations, warranties, or covenants

(regardless of how they are pleaded), yet AIG did not deliver written notice of its intention to invoke or avail itself of the remedies afforded by the Origination Agreement with respect to such alleged breaches within six months of such discovery or receipt of such notice. Accordingly, AIG's claims with respect to any such alleged breach, and any damages or losses that allegedly result or arise therefrom, relate thereto, or are in connection therewith, have been waived by AIG in all respects, and AIG has no right to take any action, invoke any remedy, or recover any damage or loss with respect thereto.

**Twenty-Fifth Defense**

AIG's claims are barred to the extent they are based on breaches of representations and warranties that expired long ago. In particular, Section 3.02(b) of the Origination Agreement provides:

> The representations and warranties set forth in Section 3.02(a) shall survive with respect to any Life Policy for fifteen (15) months from the related Escrow Date; provided, however, if any breach is discovered on a later date because of the fraud, willful misconduct or gross negligence of any Originator, the foregoing fifteen-month limitation shall not apply.

AIG did not discover the alleged breaches of Section 3.02(a)—or any other alleged conduct that fundamentally sounds in such breaches, regardless of how AIG has pleaded it—more than fifteen months after the respective Escrow Dates of the Life Policies at issue because of fraud, willful misconduct, or gross negligence of Coventry First. The Section 3.02(a) representations and warranties with respect to the Life Policies at issue in AIG's complaint therefore expired 15 months after their respective Escrow Dates, and AIG's claims with respect to them are barred.

**Twenty-Sixth Defense**

AIG's claims against Defendants other than Coventry First are barred in whole or in part by Section 8.14 of the Origination Agreement, which provides in pertinent part:

> Limited Recourse. . . . The obligations of each Originator under this Agreement are solely the obligations of such Originator and payable from, and with recourse only to, the assets of such Originator. No recourse shall be had for the payment of any amount owing by an Originator hereunder, or for the payment by an Originator of any fee in respect hereof or any other obligation or claim of or against an Originator arising out of or based on this Agreement or against any partner, owner, beneficiary, agent, officer, director, employee or agent of such Originator; provided, however, that nothing in this Section 8.14 shall relieve an Originator from any liability which such Originator may otherwise have in such capacity for its own gross negligence or willful misconduct.

AIG's claims arise out of or are based on the Origination Agreement, or fundamentally sound in alleged breaches of the Origination Agreement. Accordingly, such claims are barred to the extent they are asserted against Defendants other than Coventry First.

* * * * *

Defendants have insufficient information upon which to form a belief as to whether there may be other, as yet unstated, defenses available, and therefore expressly: (1) reserve the right to amend or supplement their Answer; and (2) reserve the right to assert any and all additional defenses under any applicable law in the event that discovery or the evidence indicates such defenses would be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray for relief and judgment in their favor as follows:

a. Plaintiff's complaint be dismissed with prejudice.

b. Granting Defendants their costs and reasonable attorney's fees pursuant to § 8.03 of the Origination Agreements.

c. Granting Defendants such other relief that the Court deems just and equitable.

Dated: Washington, DC
February 24, 2015

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

/s/ Kenneth J. Brown

Heidi K. Hubbard (*pro hac vice*)
Kenneth J. Brown (*pro hac vice*)
William P. Ashworth (*pro hac vice*)
Charles Davant IV (*pro hac vice*)

725 12th Street, N.W.
Washington, DC 20005
(202) 434-5000
hhubbard@wc.com
kbrown@wc.com
washworth@wc.com
cdavant@wc.com

PILLSBURY WINTHROP SHAW PITTMAN LLP

E. Leo Milonas
David G. Keyko
1540 Broadway
New York, NY 10036
(212) 858-1000
eleo.milonas@pillsburylaw.com
david.keyko@pillsburylaw.com

*Attorneys for Coventry First LLC et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February, 2015, a copy of the Foregoing Answer and Affirmative Defenses was uploaded to and filed with the CM/ECF System for the United States District Court for the Southern District of New York, with a courtesy copy delivered via e-mail to the following:

Randy M. Mastro
Caitlin J. Halligan
James L. Hallowell
Jefferson E. Bell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: 212-351-4000
Fax: 212-351-4035

/s/ Stewart H. Ackerly
Stewart H. Ackerly